**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| ADT SERVICES AG | : | |
| a Swiss corporation, | : | |
| Freier Platz 10, CH-8200 | : | |
| Schaffhausen, Switzerland, | : | |
| | : | |
| and | : | |
| | : | |
| ADT SECURITY SERVICES, INC., | : | |
| a Delaware corporation, | : | |
| One Town Center Road | : | |
| Boca Raton, Florida 33486, | : | CIVIL ACTION NO._____ |
| | : | |
| Plaintiffs, | : | JURY TRIAL DEMANDED |
| | : | |
| v. | : | |
| | : | |
| THOMAS BRADY and SUSAN BRADY | : | |
| as husband and wife, | : | |
| 1641 Coton Hall Cove, | : | |
| Collierville, Tennessee 38017, | : | |
| | : | |
| and | : | |
| | : | |
| LANCE WOODS, an Individual, | : | |
| 235 Germantown Bend Cove, Suite 2 | : | |
| Cordova, Tennessee 38018, | : | |
| | : | |
| and | : | |
| | : | |
| THE ALARM COMPANY, LLC | : | |
| a Tennessee corporation, | : | |
| 235 Germantown Bend Cove, Suite 2 | : | |
| Cordova, Tennessee 38018, | : | |
| | : | |
| and | : | |
| | : | |
| SECURITY NETWORKS, LLC | : | |
| a Florida corporation, | : | |
| 3223 Commerce Place, Suite 101 | : | |
| West Palm Beach, Florida 33477, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

ADT Services AG and ADT Security Services, Inc. ("ADT" or "Plaintiffs"), by and through their undersigned counsel, bring this action against THOMAS BRADY, SUSAN BRADY, LANCE WOODS, THE ALARM COMPANY, LLC ("THE ALARM COMPANY"), and SECURITY NETWORKS, LLC ("SECURITY NETWORKS") ("Defendants") for:   (1) Federal Trademark Infringement under 15 U.S.C. § 1114 of the Lanham Act; (2) Unfair Competition under 15 U.S.C. § 1125(a) of the Lanham Act; (3) Violation of Tennessee's Consumer Protection Act (Tenn. Code Ann. § 47-18-101 *et. seq.* ); (4) Tortious Interference with Contractual Relationships; and (5) Trade Disparagement or Trade Libel.   Plaintiffs seek damages, treble damages, attorneys' fees and costs, lost profits, punitive damages, prejudgment interest and injunctive relief to enjoin Defendants from continuing to engage in the unlawful activities described herein.

## THE PARTIES

1.      Plaintiff ADT Services AG is a corporation organized under the laws of Switzerland with its principal place of business located at Freier Platz 10, CH-8200 Schaffhausen, Switzerland.

2.      Plaintiff ADT Security Services, Inc. is a Delaware corporation with its principal place of business at One Town Center Road, Boca Raton, Florida 33486.   ADT is in the business of providing residential and commercial security monitoring and related services.

3.      THE ALARM COMPANY is a Tennessee corporation with its principal place of business at 235 Germantown Bend Cove, Suite 2, Cordova, Tennessee 38018.

4.      SECURITY NETWORKS is a Florida corporation with its principal place of business at 3223 Commerce Place, Suite 101, West Palm Beach, Florida  33407.

5.  THOMAS BRADY is an employee of THE ALARM COMPANY, which is owned by his wife, SUSAN BRADY.

6.  Upon information and belief, THOMAS BRADY and SUSAN BRADY are married and live together at 1641 Coton Hall Cove, Collierville, Tennessee 38017.

7.  Upon information and belief, LANCE WOODS is an employee of THE ALARM COMPANY.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction over Plaintiffs' Lanham Act claims pursuant to Title 28 U.S.C. §§ 1331 and § 1338.

9.  This Court's jurisdiction over Plaintiffs' state law claims is further supported by Supplemental Jurisdiction as set forth in Title 28 U.S.C. § 1367.

10.  Venue is proper in this Court pursuant to Title 28 U.S.C. § 1391(b).

11.  As set forth in detail below, ADT, THE ALARM COMPANY and SUSAN BRADY were parties to a prior related action and Settlement Agreement, over which this Court retained jurisdiction "over any and all disputes arising from, related to or in any manner connected to the [Settlement Agreement], or any terms, conditions or provisions therein." *See* Exhibit "D," Judgment and Consent Order Dismissing Case with Prejudice.

## RELEVANT FACTS

12.  ADT is the largest and best-known provider of electronic security services in the United States.

13.  ADT provides security services for homes and businesses around the country and, of particular relevance to this matter, throughout Tennessee.

14.     ADT Services AG owns numerous Federal Registrations and Common Law rights in and to the ADT Registered Trademarks in the United States, including, but not limited to, the following Trademarks ("ADT Registered Trademarks") that are registered with the United States Patent and Trademark Office: Registration Nos. 710,708; 3,445,423; and 3,485,321.  *See* Exhibit "A," United States Patent and Trademark Office Registrations.  ADT Security Services, Inc. is a Licensee of the U.S. Federal Trademark Rights for the ADT Trademarks.

15.     THE ALARM COMPANY also provides security services for homes in Tennessee and is a competitor of ADT.

16.     Plaintiffs are informed and believe that THE ALARM COMPANY is owned and controlled by SUSAN BRADY.   Plaintiffs are informed and believe that THE ALARM COMPANY is controlled by THOMAS BRADY.

17.     Upon information and belief, SUSAN BRADY incorporated THE ALARM COMPANY in Tennessee on August 29, 2002.  *See* Exhibit "B," Tennessee Secretary of State Filing Information.

18.     SECURITY NETWORKS also provides security services for homes in Tennessee and is a competitor of ADT.

19.     SECURITY NETWORKS and THE ALARM COMPANY are affiliated entities that do business together in some fashion in at least the state of Tennessee.

20.     Upon information and belief, THE ALARM COMPANY installs security systems for which SECURITY NETWORKS provides security monitoring services.

A.     **The Alarm Company's Former Relationship with ADT and the Prior Litigation**

21.     ADT markets its security services, *inter alia*, through an Authorized Dealer Program.  As part of ADT's Authorized Dealer Program, ADT contracts with third-parties, who

qualify as Authorized Dealers under ADT's Authorized Dealer Program Guidelines.

22.    ADT's Authorized Dealers market security systems and monitoring services to homeowners and businesses.  ADT's Authorized Dealers are compensated for providing these services.

23.    On September 26, 2000, ADT executed an Authorized Dealer Agreement with a company named Crime Prevention, Inc. and THOMAS BRADY.  Upon information and belief, THOMAS BRADY was the owner, sole officer and manager of Crime Prevention, Inc.

24.    Crime Prevention, Inc. and THOMAS BRADY remained an ADT Authorized Dealer for two years, but during that time, the relationship between ADT and THOMAS BRADY deteriorated because, among other things, THOMAS BRADY verbally threatened an ADT manager.  Thereafter, on or September 26, 2002, ADT terminated Crime Prevention, Inc. and THOMAS BRADY as an ADT Authorized Dealer.

25.    Following termination of the dealer relationship, ADT sued Crime Prevention, Inc. and THOMAS BRADY in *ADT Security Services, Inc. v. Crime Prevention, Inc., and Thomas P. Brady*, Case Number 03-CV-0655, Division 201 in the Arapahoe District Court in Colorado to collect money owed to it under the Authorized Dealer Agreement.

26.    Judgment was entered in favor of ADT against Crime Prevention, Inc. and THOMAS BRADY in an amount exceeding $200,000 dollars.

27.    On September 28, 2005, THOMAS BRADY filed for protection under Chapter 7 of the United States bankruptcy laws.

28.    As of the date of termination of the Authorized Dealer Agreement, THOMAS BRADY no longer was permitted to hold himself or any future company out as being an ADT Authorized Dealer or affiliated with ADT in any manner.

29.     Within a month of ADT's termination of Crime Prevention and THOMAS BRADY as an Authorized Dealer, SUSAN BRADY incorporated THE ALARM COMPANY.

30.     Upon information and belief, THE ALARM COMPANY was created for the purpose of continuing the business of Crime Prevention, Inc. and shielding THOMAS BRADY from creditors, including ADT.

31.     Upon information and belief, THE ALARM COMPANY took over the offices, telephone number, bank, computer software, most personnel and most customer accounts of Crime Prevention, Inc.

32.     On October 18, 2005, ADT filed a lawsuit in this Court captioned *ADT Security Services, Inc. v. The Alarm Co., LLC*, Case Number 05-CV-2779, against SUSAN BRADY and THE ALARM COMPANY as successors-in-interest to Crime Prevention, Inc., alleging breach of the Authorized Dealer Agreement, Interference with Prospective Business Advantage, Intentional Interference with Contract, Conspiracy, Fraudulent Conveyance and violation of the Unfair Trade Practices and/or Consumer Protection Acts.  *See* Exhibit "C," Complaint filed in the United States District Court for the Western District of Tennessee, Western Division ("Prior Litigation").

33.     ADT alleged in the Prior Litigation that Defendant THE ALARM COMPANY used ADT's intellectual property and engaged in deceitful and misleading business practices to solicit ADT subscribers to breach their contracts with ADT.

34.     Upon information and belief, LANCE WOODS is an employee of THE ALARM COMPANY and participated in the conduct that gave rise to the filing of the Prior Litigation as well as the conduct set forth herein.

35.     Specifically, ADT alleged in the Prior Litigation that THOMAS BRADY and THE ALARM COMPANY approached ADT Customers and continued to represent themselves as affiliated with ADT when they were not, thereby gaining entry into customers' homes under false pretenses.  Then, after gaining access to ADT Customers' homes, THOMAS BRADY and THE ALARM COMPANY induced ADT Customers to cancel their ADT contracts by, among thing things, making false statements about ADT.

36.     In April 2008, ADT, THE ALARM COMPANY, AND SUSAN BRADY entered into a Settlement Agreement in the Prior Litigation.  On June 9, 2008, the Court dismissed the lawsuit according to the terms of the Settlement Agreement.  *See* Exhibit "D," Judgment and Consent Order Dismissing Case with Prejudice.

### B.     Defendants' Continued, Pervasive and Unlawful Conduct

37.     After the parties entered into the Settlement Agreement, ADT learned, both from public news stories and through its own investigation, that the Alarm Company was engaging in conduct that was not in conformity with State and Federal Law and, upon information and belief, may not be in conformity with the terms of the Settlement Agreement.

38.     Specifically, on May 1, 2008, Eyewitness News Everywhere printed a news story regarding the activities of the THE ALARM COMPANY and THOMAS BRADY.  The article details how THOMAS BRADY tricked Eula Hicks, an elderly woman with Alzheimer's, who was an ADT Customer, to switch over to THE ALARM COMPANY.  *See* Exhibit "E," Eyewitness News Everywhere story, 05/01/2008.

39.     Upon information and belief, THOMAS BRADY represented to Ms. Hicks and her daughter that he was from ADT and the company was going out of business, and he would give her a new security system.  *See* Exhibit "E."

40.     THOMAS BRADY'S representations about ADT were false.

41.     Then, on September 14, 2009, ADT again learned of Defendants' persistent unlawful activities in a new story by Action News 5, a television news station in Memphis, Tennessee.  Action News 5 reported that a door-to-door security system company, THE ALARM COMPANY, was soliciting consumers in the Covington and Ripley areas, under false pretenses and scaring elderly residents.

42.     As set forth in the to Action News 5's report, Judy Glass was present at her elderly mother-in-law's house when THOMAS BRADY knocked on the door.  *See* Exhibit "F," Transcript of Action News 5's 09/14/2009 news story.

43.     According to Ms. Glass, her mother-in-law believed that THOMAS BRADY was affiliated with her current security system provider, ADT.  *See* Exhibit "F."

44.     Ms. Glass then became "concerned" and "realized he was not with ADT, but he was in the neighborhood, targeting ADT Customers."  *See* Exhibit "F."

45.     According to Ms. Glass, THOMAS BRADY "got agitated when she wanted to wait on signing any paper work."  Ms. Glass was told that it was a one-time offer and that he would be leaving Covington, Tennessee for Ripley, Tennessee the next day.  *See* Exhibit "F."

46.     However, Defendants' persistent and systematic conduct continues.

47.     On March 1, 2010, WATE in Knoxville, Tennessee reported that THE ALARM COMPANY and THOMAS BRADY again were approaching ADT Customers under false pretenses and tricking customers into switching their alarm services.  *See* Exhibit "G," Transcript of WATE 6 News' 03/18/2010 news story.

48.     Alice Johnson, an ADT Customer, is a 95 year old homeowner who takes care of her 100 year old sister.

49.     LANCE WOODS went to Ms. Johnson's house and represented that he was an ADT employee who was at her house to "update" her security system because of recent crime in the neighborhood.

50.     Ms. Johnson only allowed LANCE WOODS into her house because he stated he was from ADT and because she was concerned when he told her that there had been an outbreak of crime in her neighborhood.

51.     The next day, when Ms. Johnson's cousin came to visit, he pointed out that the signs in her yard stated that she had security monitoring from SECURITY NETWORKS.  Only then did Ms. Johnson realize that LANCE WOODS has replaced her security system rather than providing upgrades to her existing ADT security system.

52.     Ms. Johnson was very upset by the misrepresentation made by LANCE WOODS in order to switch her account to SECURITY NETWORKS.  She stated "I think it was the lowest thing that could have been done.  To come in here and lie to get some work done."  *See* Exhibit "G."

53.     It was reported in WATE news report that THOMAS BRADY spoke to the reporter on behalf of THE ALARM COMPANY and SECURITY NETWORKS, stating "[a]s far as her story goes, she's 95 years old.  Do you believe her?"  *See* Exhibit "G."

C.     **Defendants' Abysmal Better Business Bureau Record**

54.     The Better Business Bureau of the Mid South has issued THE ALARM COMPANY an "F" rating.  An "F" is the worst rating on the Better Business Bureau's scale. *See* Exhibit "H," Better Business Report for The Alarm Company.

55.     As reported by Action News 5, THE ALARM COMPANY has received 22 complaints against the company in the last 3 years, failed to respond to 4 complaints, has 2

unresolved complaints, and has 4 complaints against it categorized as "serious."  *See* Exhibit "F."

56.     The Better Business Bureau of the Mid South further reports that THE ALARM COMPANY has received 10 complaints – the majority of its complaints – in the category of "Sales Practices."  The practices are described by the Better Business Bureau as follows:

> Complainants and callers have indicated that Mr. Tom Brady and other representatives of The Alarm Company, LLC used deceptive, misleading and high-pressure sales tactics. Specifically, consumers state that company representatives either directly indicated that they were with the consumer's current alarm company or led consumers to believe that they were a representative of their current alarm company and were at their home to upgrade their current system.

> Additionally, complaints filed with the BBB state that consumers were told that their contract with their current alarm company was no longer valid; their current alarm company was canceling their system; their current alarm company was going out of business and/or would no longer service their system; and that The Alarm Company, LLC was taking over accounts for their current alarm company.  *See* Exhibit "H."

57.     An employee of the Better Business Bureau, Randy Hutchinson, stated in an interview with Action News 5 that he was concerned about the nature of the complaints regarding THE ALARM COMPANY because "many of the complaints allege that they are misleading people into thinking that they are with the customer's current alarm company and somehow convincing them this is some sort of upgrade."  *See* Exhibit "F."

**D.     Defendants' Unlawful Business Model**

58.     Upon information and belief, THE ALARM COMPANY has been sending its employees to the doors of ADT's Customers and then, through a number of unlawful tactics (such as deceit, fraudulent or misleading statements, outright lies, and intimidation) has been attempting to force ADT Customers to transfer their contracts for security services to THE

ALARM COMPANY and SECURITY NETWORKS.

59.     Upon information and belief, the Defendants gain entry to the ADT Customer's home by suggesting that they are ADT employees and then overhaul the ADT Customer's existing security system.  By the time the ADT Customer discovers that the system has been switched from ADT to THE ALARM COMPANY and SECURITY NETWORKS, they have already signed a contract changing his/her security service.

60.     Defendants have been misleading ADT Customers in Tennessee and providing false statements to ADT Customers in at least the following ways:

a.      Misinforming ADT Customers that ADT is out of business;

b.      Misinforming ADT Customers that ADT is no longer providing security services to that ADT Customer;

c.      Misinforming ADT Customers that they need to switch their business to THE ALARM COMPANY because it is taking over ADT's Customer accounts;

d.      Misinforming ADT Customers that ADT is cancelling their contracts for security monitoring services;

e.      Misinforming ADT Customers that ADT is cancelling their security monitoring services;

f.      Sending THE ALARM COMPANY employees to the homes of ADT Customers and falsely implying either a relationship between ADT and THE ALARM COMPANY or that ADT has gone out of business and that THE ALARM COMPANY is its successor; and

g.      Misinforming ADT Customers that they have to switch their business to THE ALARM COMPANY and then pressuring customers who resist.

61.     On December 1, 2009, Plaintiffs wrote to THOMAS BRADY and SUSAN BRADY demanding that they and THE ALARM COMPANY immediately cease and desist from approaching ADT's customers and making fraudulent statements about ADT.  *See* Exhibit "I," Cease and Desist Letter to The Alarm Company.

62.     THOMAS BRADY responded by stating that THE ALARM COMPANY was acting in compliance with the Settlement Agreement with ADT.  *See* Exhibit "J," Letter from T. Brady.

63.     Plaintiffs have been and will continue to be irreparably harmed if Defendants are permitted to continue to engage in this systematic, unlawful scheme of luring ADT Customers away from ADT through lies, intimidation, unlawful business practices, and deceit.

64.     ADT's revenue is based on the recurring revenue from ADT Customers for ADT's alarm monitoring services.   It would be difficult to determine the amount of compensation lost by ADT because Defendants have switched ADT Customers' accounts.  There is no indication how long an ADT customer would have remained with ADT's monitoring services if not for Defendants' interference.   Thus, it would be difficult, if not impossible, to determine how much revenue ADT has lost as a result of Defendants' unlawful activities.

65.     Former ADT Customers that are misled by Defendants may further communicate Defendants' misrepresentations to other ADT customers, which may cause ADT to lose further compensation.  It would be difficult or impossible for ADT to determine the identity and number of ADT Customers that will be lost as a result of Defendants' unlawful conduct.  The amount of compensation that would afford ADT adequate relief for Defendants' continuing unlawful conduct would be difficult or impossible to determine, and ADT has no adequate remedy at law.

66.     Defendants' conduct as alleged is fraudulent, malicious and oppressive, wherefore Plaintiffs also seeks Punitive Damages in a sum sufficient to deter any future conduct from these Defendants.

## COUNT I

### Federal Trademark Infringement Under Lanham Act - 15 U.S.C. § 1114 *et seq.*

67.     Plaintiffs incorporate by reference all allegations contained in the above paragraphs as though set forth fully herein.

68.     Plaintiffs have used and continue to use ADT Registered Trademarks nationwide in connection with offering for sale services providing residential and commercial security monitoring.

69.     Defendants are using ADT's Registered Trademarks in connection with the sale of services providing residential and/or commercial security monitoring.

70.     Upon information and belief, Defendants are using ADT's Registered Trademarks in conjunction with misleading ADT Customers into believing Defendants services are associated, affiliated or sponsored by ADT.

71.     Defendants' use of ADT's Registered Trademarks is likely to cause confusion, mistake or deception in the general public and to ADT's Customers as to the origin of the services Defendants offer.

72.     Defendants acts are likely to cause confusion, mistake or deceive consumers because the public is likely to believe that Defendants' services, referencing the ADT Registered Trademarks are in some manner approved by, associated with, sponsored by, or connected with Plaintiffs.

73.     Defendants' acts have been willful and undertaken with the intention of deceiving potential and/or present ADT Customers.

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiffs injunctive relief, damages, lost profits, attorneys' fees and costs, treble damages and prejudgment interest.

## COUNT II

### Unfair Competition Under Lanham Act - 15 U.S.C. § 1125(a)(1) *et seq.*

74.     Plaintiffs incorporate by reference all allegations contained in the above paragraphs as though set forth fully herein.

75.     In promoting their own similar competitive services, Defendants are making false, misleading statements about ADT's business, including but not limiting to the statements alleged herein.

76.     The statements actually have deceived some ADT Customers and have the tendency to deceive a substantial segment of ADT's Customer Base.

77.     Defendants' false and misleading statements are material, in that it they are likely to influence the customers' purchasing decisions.

78.     ADT has been and will continue to be injured as a result of Defendants' false statements, either by direct diversion of sales from itself to Defendants or by a lessening of the goodwill associated with ADT's services.

79.     Plaintiffs have and will suffer irreparable damage to its business and goodwill by reason of Defendants' unlawful acts unless Defendants are restrained and enjoined.

80.     Defendants' acts are likely to cause confusion, mistake, or deception as to the origin, connection, association, sponsorship, or approval of Defendants or Defendants' services.

Defendants' statements to ADT Customers that they are representatives of ADT constitute false designation of origin of Defendants' services in violation of 15 U.S.C. § 1125(a)(1)(A).

81. Defendant's acts also constitute willful, deliberate, false, and misleading representations of fact as to the nature and characteristics of Defendants' services, in violation of 15 U.S.C. § 1125(a)(1)(B), because Defendants' security services are <u>not</u> affiliated with ADT in any way. Defendants' misleading statements that they are ADT representatives constitute false advertising.

82. As a direct and proximate result of Defendant's Unfair Competition, Plaintiffs have suffered and will continue to suffer monetary damages and irreparable harm.

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiffs injunctive relief, damages, lost profits, attorneys' fees and costs, treble damages and prejudgment interest.

## COUNT III

### Violation of the Tennessee Consumer Protection Act – Tenn. Code Ann. § 47-18-101 *et. seq.*

83. Plaintiffs incorporate by reference all allegations contained in the above paragraphs as though set forth fully herein.

84. Defendants' misleading statements to ADT Customers constitute unfair and deceptive trade practices.

85. Defendants made false statements regarding ADT or being representatives of ADT to confuse consumers and profit from their confusion.

86. Defendants made false statements to ADT Customers in connection with conducting trade or commerce. Specifically, Defendants were selling security services when they made false statements to consumers.

87.    Defendants' statements that they are representatives of ADT constitute an attempt by Defendants to falsely pass off inferior goods and/or services to consumers as those of ADT.

88.    Defendants are further creating confusion with consumers regarding the source of its security monitoring services.  Consumers believe ADT, a trusted home security business, is monitoring their house when it is not.

89.    Defendants made deceptive representations including that ADT has gone out of business, is no longer servicing the ADT Customer's area and/or has cancelled the ADT Customer's contract.

90.    Defendants' conduct is evidence of a willful and knowing attempt to deceive and confuse consumers.

91.    As a direct and proximate result of Defendant's Deceptive Business Practices, Plaintiffs have suffered and will continue to suffer monetary damages and irreparable harm.

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiffs injunctive relief, damages and treble damages.

## COUNT IV

## Tortious Interference with Contractual Relationships – Tenn. Code Ann. § 47-50-109 and Tennessee Common Law

92.    Plaintiffs incorporate by reference all allegations contained in the above paragraphs as though set forth fully herein.

93.    ADT has enforceable contracts with its current customers.

94.    Defendants have knowledge of the existence of ADT's security monitoring service contracts with customers.

95.     Defendants' intentional acts were designed to induce and persuade ADT's Customers to breach or disrupt their contractual relationship with ADT.

96.     Defendants made misrepresentations to ADT's Customers for the purpose of inducing them to breach their contracts with ADT.

97.     ADT's contractual relationships with some of its customers have been breached or disrupted by Defendants' actions.

98.     Defendants' acts have caused damages to ADT.

99.     As a direct and proximate result of Defendant's Tortious Interference with Contractual Relationships, Plaintiffs have suffered and will continue to suffer monetary damages and irreparable harm.

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiffs injunctive relief, damages and an election of either punitive damages or treble damages under Tenn. Code Ann. § 47-50-109.

## COUNT V

### Trade Disparagement or Trade Libel under Tennessee Common Law

100.    Plaintiffs incorporate by reference all allegations contained in the above paragraphs as though set forth fully herein.

101.    Defendants' sales activities contain statements about ADT services that are false.

102.    Defendants' false and misleading statements demean the quality of ADT's goods.

103.    These false and misleading statements are material and tend to induce ADT Customers to stop using ADT's services.

104.    Defendants' false and misleading statements have caused and will cause ADT to lose sales and good will and suffer damages.

105.    As a direct and proximate result of Defendant's Trade Disparagement or Trade Libel, Plaintiffs have suffered and will continue to suffer monetary damages and irreparable harm.

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiffs injunctive relief, damages and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiffs the following relief:

a.    that Plaintiffs be awarded preliminary and then permanent injunctive relief against Defendants to halt Defendants' ongoing wrongful conduct;

b.    that Defendants be prohibited from using ADT's name in connection with any of Defendants' future communications, statements to potential security service customers, solicitations for business, letterheads, signature blocks, advertisements or in conjunction with the sale of its security services;

c.    that Defendants be prohibited from making any representations that suggest or imply an association, sponsorship, connection, or relationship with Plaintiffs;

d.    that Defendants be prohibited from interfering with ADT's contractual relationships with its customers;

e.    that Plaintiffs be awarded Compensatory Damages in the amount of Plaintiffs' losses resulting from Defendants' wrongful conduct, to be determined at Trial;

f.    that Plaintiffs be awarded Treble Damages resulting from Defendants' wrongful conduct;

g.     that Plaintiffs be awarded Punitive Damages as a result of Defendants' willful and malicious conduct, in an amount to be determined at Trial;

h.     that Plaintiffs be awarded Attorneys' Fees and Costs incurred in the prosecution of this action pursuant to Title 15 U.S.C. § 1117;

i.     that Plaintiffs be awarded Prejudgment Interest in the maximum amount allowable by law; and

j.     that Plaintiffs be granted such other relief as the Court deems just and proper and/or as the nature of Plaintiffs' claims may require.

**GLANKLER BROWN, PLLC**

By:    /s/Jeremy G. Alpert             
            Jeremy G. Alpert (#19277)

1700 One Commerce Square
Memphis, TN  38103
Telephone:  901.576.1791
Facsimile:  901.525.2389
Email:  jalpert@glankler.com

– and –

M. Kelly Tillery, Esquire*
Elizabeth S. Campbell, Esquire *
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone:  215.981.4000
Facsimile:  215.981.4750
Emails:     tilleryk@pepperlaw.com
           campbelle@pepperlaw.com

*Attorneys for Plaintiffs ADT Services AG and ADT Security Services, Inc.*

Dated:  March 22, 2010
*Pro Hac Vice Application to be Filed*