**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

ADT SERVICES, AG, and ADT SECURITY
SERVICES, INC.,

    Plaintiffs,

v.                                                        Case No. 10-2197

THOMAS BRADY, et al.,

    Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT, AND DENYING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

Following the court's order granting in part and denying in part Plaintiffs ADT Services, AG and ADT Security Services, Inc.'s (collectively, "ADT") motion to compel, the court allowed limited supplemental discovery. ADT now moves for partial summary judgment on Defendants' sole remaining counterclaim; Defendants move for summary judgment on ADT's claim for tortious interference with contractual relationships as well as on all claims against Defendant Susan Brady. The court held a hearing on May 21, 2014, and directed the parties to submit supplemental briefing regarding whether the corporate veil of Defendant "The Alarm Company" could be pierced and liability imposed on Defendant Susan Brady as to ADT's state-law claims. For the following reasons, ADT's motion will be granted and Defendants' motion will be denied.

## I. BACKGROUND[1]

In 2000, Defendant Tom Brady signed an Authorized Dealer Agreement with ADT; two years later ADT terminated the agreement. (Dkt. # 198-2, Pg. ID 2529.) ADT brought an action against Brady to collect on outstanding debt and obtained a default judgment against Brady. (*Id.* at Pg. ID 2530.) Once ADT terminated Brady as a dealer, he was no longer authorized to hold himself or his business out to the public as an ADT affiliate. (*Id.*)

Soon after ADT terminated Brady's former alarm company as an authorized dealer, Brady's wife, Sue Brady, formed "The Alarm Company," through which Tom Brady continued his alarm services business. (*Id.*) When ADT learned that Brady was holding himself out to its customers as an ADT affiliate, it sued Brady. During this previous action, ADT submitted various affidavits showing that Brady engaged in false representations to ADT's customers, including telling an ADT customer that he was from "the alarm company that was taking over ADT," as well as displaying an ADT identification badge as part of his efforts to solicit business. (*Id.*) When one of ADT's customers tried to cancel her contract with Brady, he responded with profanities, including calling the customer a "f__ing bi__." (*Id.* at Pg. ID 2531.) ADT and Defendants eventually settled this previous action with terms that Defendants would no longer sell alarm systems in certain areas. (*Id.*)

In 2008, two sales agents representing Defendants, including Defendant Lance

---

[1]Because Defendants chose not to respond to ADT's statement of undisputed material facts, the court takes all of Plaintiffs' facts as undisputed for the purposes of summary judgment. W.D. Tenn. Local R. 56.1(d).

Woods, visited an ADT customer at her home. They stated that they were from ADT, and were visiting to upgrade the customer's ADT alarm system. The customer, who was 82 at the time, did not read the contract they asked her to sign, believing that it was from ADT. (*Id.* at Pg. ID 2532.) Defendants repeated these practices with at least four additional elderly ADT customers. (*Id.* at Pg. ID 2532–36.) Defendants' behavior was the subject of various Better Business Bureau complaints, as well as several news reports. (*Id.* at Pg. ID 2536–37.) In 2010, the Better Business Bureau issued its lowest rating to The Alarm Company reporting:

> Complainants and callers have indicated that Mr. Tom Brady and other representatives of The Alarm Company, LLC used deceptive, misleading and high-pressure sales tactics. Specifically, consumers stated that company representatives either directly indicated that they were with the consumer's current alarm company or led consumers to believe that they were a representative of their current alarm company and were at their home to upgrade their current system.

(*Id.* at Pg. ID 2537.) For the purposes of the current motions, neither party disputes that Susan Brady never solicited, attempted to solicit, or contacted any individual regarding solicitation of The Alarm Company's home security services. (Dkt. # 202-1, Pg. ID 2832.)

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). The movant has the initial burden of showing the absence of a genuine

3

dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Summary judgment, therefore, is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## III. DISCUSSION

ADT moves for summary judgment on Defendants' sole remaining counterclaim, while Defendants move for summary judgment on ADT's tortious-interference-with-contractual-relationships claim, as well as on all claims against Susan Brady. Each motion will be addressed in turn.

### A. Defendants' Defamation Counterclaim

In order to prove defamation, Defendants must establish:

1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement.

*Wright v. Sodexho Marriott Servs.*, 30 F. App'x 566, 566 (6th Cir. 2002) (citing *Sullivan v. Baptist Memorial Hosp.*, 995 S.W.2d 569, 571–72 (Tenn. 1999) (internal citations omitted). As the parties bringing the defamation counterclaim, Defendants bear the burden of proving that the statements in question were false. *Woodruff v. Ohman*, 166 F. App'x 212, 216 (6th Cir. 2006). "Damages from false or inaccurate statements

4

cannot be presumed; actual damages must be sustained and proved." *Brown v. Christian Bros. Univ.*, No. W2012-01336-COA-R3-CV, 2013 WL 3982137, at *8 (Tenn. Ct. App. Aug. 5, 2013).

Defendants allege that ADT defamed them by publishing a press release which quoted David Bleisch, ADT's Chief Legal Officer, as saying: "We believe it is our responsibility as the nation[']s leading home security provider to aggressively pursue cases against people who lie, mislead and harass unsuspecting victims." (Dkt. # 201, Pg. ID 2808.) The press release also cited ADT's previous legal action against Tom and Sue Brady, as well as the Better Business Bureau's "F" rating for The Alarm Company.

Summary judgment will be granted to ADT on Defendants' counterclaim for two reasons. First, despite arguing that ADT did not adequately investigate the facts surrounding their press release before issuing it, Defendants present no evidence that the statements were, in fact, false. Because it is their burden to demonstrate falsity, *see Woodruff*, 166 F. App'x at 216, Defendants' defamation claim fails. Alternatively, ADT also argues that Defendants' defamation claim should fail because they have presented no evidence of actual damages. Defendants do not meaningfully address this argument, instead choosing to canvass the law in a variety of jurisdictions where damages may be presumed for false and malicious statements. However, Tennessee law is clear that actual damages must be proven in order to sustain a defamation claim. *See, e.g.*, *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 137–38 (6th Cir. 1996) ("Under Tennessee law, the defamation plaintiff must prove actual damages; a court may not presume them."); *Emerson v. Garner*, 732 S.W.2d 613, 617 (Tenn. Ct. App.

5

1987) ("The doctrine of presumed damages in libel and slander cases is no longer applicable in Tennessee."). Defendants present no evidence of actual damages, therefore, summary judgment is granted to ADT on Defendants' counterclaim.

### B. Tortious Interference with Contractual Relationships (All Defendants)

Defendants argue that ADT cannot prove its claim of tortious interference with contractual relationships. Although ADT brings its claim for tortious interference under both statutory and common law theories, the elements ADT must prove are the same under either theory:

> (1) there was a legal contract; (2) the defendant was aware of the contract; (3) the defendant maliciously intended to induce a breach; and (4) the defendant's actions proximately caused a breach and resulting damages.

*Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 659 (E.D. Tenn. 2004).

Defendants challenge only ADT's ability to prove the first element, that is, that there was a legal contract between ADT and various third-party customers. Without citation to the record, or to legal authority, Defendants argue that "ADT's monitoring contracts provide a buy-out mechanism within the contracts. Exercising that right is not a breach or otherwise wrongful. To hold defendants in violation is in essence denying every ADT customer the right to exercise the termination provisions under the very language ADT provided and agreed to." (Dkt. # 196, Pg. ID 2501.)

To the extent Defendants challenge ADT's ability to present evidence regarding contracts that Defendants tortiously induced its customers to breach, their argument is without merit. In response to Defendants' motion, ADT attaches excerpts from depositions with its customers who state that they had a contract with ADT until Defendants' sales representatives induced them to sign a new contract with The Alarm

6

Company under the pretense that the sales representatives were agents of ADT. (Dkt. # 198-3, Pg. ID 2546–47; Dkt. # 198-4, Pg. ID 2572–73; Dkt. # 198-5, Pg. ID 2631–4; Dkt. # 198-6, Pg. ID 2656–59; Dkt. # 198-7, Pg. ID 2697–2700.) ADT has therefore met its burden of putting forth enough evidence to show that there is a genuine issue for trial. *Horton*, 369 F.3d at 909 (6th Cir. 2004).

And to the extent Defendants argue that ADT cannot recover for tortious interference with a contract because the contracts were terminable by ADT's customers, their argument is without legal support. "[T]he Tennessee Appellate Court has expressly held that 'although the contract was terminable at will, an action can still be maintained for procurement of the breach of the contract.'" *Denuke Contracting Servs., Inc. v. EnergX, LLC*, No. 3:07-CV-114, 2007 WL 2509686, at *4 (E.D. Tenn. Aug. 30, 2007) (quoting *New Life Corp. of Am. v. Thomas Nelson, Inc.*, 932 S.W.2d 921, 926–27 (Tenn. Ct. App. 1996)); *see also Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 n.4 (Tenn. 2002) ("Interference with the exercise by a third party of an option to renew or extend a contract with the plaintiff is also included [in the tort of intentional interference with business relationships].").[2] Summary judgment on ADT's tortious-interference-with-contractual-relationships claim is denied.

### C. Susan Brady (All Claims)

Defendants also move for summary judgment on all claims against Susan Brady,

---

[2]Although Defendants do not raise the argument, ADT correctly notes that Tennessee's "competition privilege" is not applicable here, as ADT claims wrongful business conduct, alleging that Defendants fraudulently identified themselves as ADT representatives in order to induce ADT's customers to breach their contracts. *See Polk and Sullivan, Inc. v. United Cities Gas Co.*, 783 S.W.2d 538, 543 (Tenn. 1989.)

7

arguing that ADT is unable to present any evidence demonstrating that she engaged in specific acts or practices at issue in any of ADT's claims.

In response, ADT argues that Susan Brady, as sole owner of The Alarm Company, entrusted all the operations of the company to her husband, Tom Brady, despite her knowledge that Tom Brady used The Alarm Company to engage in false and deceptive sales tactics. ADT further argues that Susan Brady did not investigate any of the complaints against The Alarm Company, and took no corrective measures to remedy The Alarm Company's false and misleading sales practices.

Addressing first ADT's federal claims for trademark infringement and unfair competition under the Lanham Act, Defendants argue that there is no evidence that Susan Brady directed, controlled, ratified, or participated in the alleged trademark infringement. "Although the Lanham Act refers only to direct trademark infringers, [the Supreme Court has] established that liability may also be imposed on those who facilitate the infringement." *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 503 (6th Cir. 2013) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844 (1982)). "An individual corporate . . . owner . . . can be liable for trademark infringement by the corporation where the individual is either personally involved in the infringement or is willfully blind to infringing activity." *Coach, Inc. v. D & N Clothing, Inc.*, No. 10-12813, 2011 WL 2682969, at *3 (E.D. Mich. July 11, 2011). "[O]strich-like business practices amount to willful blindness, which is sufficient to show . . . the intent necessary to be a contributory infringer*.*" *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007).

At her deposition, Susan Brady testified that although she was aware of numerous customer complaints to the Better Business Bureau alleging the conduct outlined above, she did not personally investigate the claims or follow-up with the employee designated to respond to the complaints. (Dkt. # 84-2, Pg. ID 1061.) She admits that although she was aware that her husband's prior company was the subject of an unfair trade practices lawsuit, she made no effort to train either herself or her company's employees on ethical business and sales practices. (*Id.* at Pg. ID 1062.) As the sole owner of The Alarm Company, she cannot recall whether she has ever overruled her husband's managerial decisions, and she does not review his performance as general manager. (Dkt. # 195-5, Pg. ID 2458.) The record currently before the court gives the impression that Susan Brady is a disinterested and uninvolved manager, who is nevertheless aware of the allegations against her corporation and husband. Despite being aware of these allegations, she took no action to correct or remedy the conduct. She cannot avoid liability by refusing to deal with the actions of her own corporation and its employees.

As to its state-law claims, ADT argues that vicarious liability should be imposed on Susan Brady because The Alarm Company is, in effect, an alter-ego allowing her and her husband to engage in spurious business practices, but perennially avoid liability. "Under Tennessee corporation law, a corporation and its shareholders are distinct entities." *Cambio Health Solutions, LLC v. Reardon*, 213 S.W.3d 785, 790 (Tenn. 2006). This separate legal status "protects [a corporation's] shareholders from direct responsibility for the corporation's debts and other liabilities, except in rare

9

circumstances when a plaintiff is successful in persuading a court to disregard the seperate corporate entity, also referred to as 'piercing the corporate veil.'" *Id.* This equitable doctrine is only applied in extreme circumstances to prevent use of the corporation's separate legal status to defraud or perform illegal acts. *Pamperin v. Streamline Mfg., Inc.*, 276 S.W.3d 428, 437 (Tenn. Ct. App. 2008). "The determination of whether a corporation is a mere instrumentality of an individual is ordinarily a fact question for the jury." *Id.* As the party seeking to pierce the corporate veil, ADT bears the burden of proof. *Id.*

Tennessee courts use the following factors when assessing whether to allow a party to pierce the corporate veil:

> Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

*Id.* As mentioned above, the resolution of whether Susan Brady may be held personally liable for the acts of her corporation is a question reserved for the jury. At this juncture, the court need only consider whether ADT has advanced sufficient evidence to warrant a jury's consideration.

By her own admission, Susan Brady is the sole owner of The Alarm Company,

thus satisfying the fourth factor above. (Dkt. # 196-5, Pg. ID 2452.) In her deposition, she further stated that she formed The Alarm Company after her husband's previous alarm company filed for bankruptcy, and that although she owns the company, she has very little personal involvement and her husband handles most of the day-to-day functions, such as hiring and training. (*Id.* at Pg. ID 2454–56.) Thus, ADT has presented evidence weighing in its favor on the sixth and seventh factors. Lastly, the gravamen of ADT's claims is that the Bradys use Susan Brady's corporation, The Alarm Company, in order to engage in abusive and fraudulent business practices, which satisfies the ninth factor as well as the court's general duty to consider whether the corporate entity is being used "to work a fraud or injustice in contravention of public policy." *Pamperin*, 276 S.W.3d at 437. Although ADT has not presented any evidence on the remaining factors, "no one factor is conclusive in determining whether to pierce the corporate veil; rather, courts will rely upon a combination of factors in deciding the issue." *Id.* Accordingly, the court concludes that a reasonable jury could find that The Alarm Company is a mere instrumentality of Susan Brady, thus exposing her to liability for The Alarm Company's actions. Summary judgment in favor of Susan Brady is denied.

## IV. CONCLUSION

IT IS ORDERED that Defendants' "Motion for Partial Summary Judgment" [Dkt. # 195] is DENIED.

IT IS FURTHER ORDERED that ADT's "Motion for Summary Judgment on Defendants' Defamation Counterclaim" [Dkt. # 198] is GRANTED. Judgment will issue at the conclusion of the litigation.

      s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: June 30, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 30, 2014, by electronic and/or ordinary mail.

      s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\10-2197.ADT.MotsSJ.jac.wpd

12